UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**PAULA KRIBBS,**

        **Plaintiff,**

**v.**                                                                                            **Civil Action No. 4:05cv159**

**WAL-MART STORES EAST, L.P.,**

        **Defendant.**

## ORDER AND OPINION

This matter is presently before the court on defendant's motion in limine and motion for summary judgment. On June 6, 2006, the court conducted a hearing to address defendant's motions. For the reasons stated on the record during the hearing, as well as the analysis set out herein, the court **GRANTS** both defendant's motion in limine and motion for summary judgment.

### I. Factual and Procedural Background

This personal injury action arises from a "slip and fall" accident that occurred while plaintiff shopped at a Wal-Mart store in Hampton, Virginia. It is undisputed that on April 12, 2005, while walking in the Hampton Wal-Mart ladies' wear department, plaintiff rolled her ankle causing her to fall. After examining the area on which she fell, plaintiff located an indentation in the floor that plaintiff estimated to be approximately six to eight inches in diameter and between an inch and a half and two inches deep (Pl. Depo. 40-41). The floor where the accident occurred was carpeted, and the floor beneath the carpet was concrete. Plaintiff's lawsuit seeks damages based on defendant's alleged negligence in maintaining the premises of the Hampton Wal-Mart.

In order to establish that the indentation in the floor existed for a significant period of time, plaintiff seeks to introduce the testimony of Charles Raynor, a self-employed contractor who is familiar with concrete and who has repaired both commercial and residential concrete floors.  Although Raynor never actually examined the indentation that plaintiff fell on, Raynor based his opinion on facts provided by plaintiff's counsel as well as the examination of several photographs taken by Robert Frame, the repairman that Wal-Mart hired to patch the indentation in the concrete.  However, subsequent to Raynor formulating and documenting his opinion, it was discovered that the photographs taken by Frame and examined by Raynor were actually photographs of two indentations located in the <u>men's wear department</u> at the Hampton Wal-Mart store.  As a result, the only evidence pertaining to the nature and characteristics of the hole at the accident site are depositions of individuals who examined the hole through the carpet and two photographs of the ladies' department floor with the carpet still in place.[1]

Clarifying the facts surrounding the photographs taken by Robert Frame, it is undisputed both that plaintiff fell in the ladies' wear department of the Hampton Wal-Mart in April of 2005 and that an indentation existed in the floor in the ladies' department at that time.  Internal Wal-Mart documents indicate that, subsequent to plaintiff's accident, Wal-Mart sought repairs to "dips" in the floor in both the ladies' and men's departments and Wal-Mart referred to the depressions as "a trip hazard."  (Def. S.J. Rebuttal Ex. B, WMDU 01).  Although Wal-Mart issued a work order for such repairs shortly after plaintiff's accident, the floor was not repaired until mid-November of 2005 when Robert Frame, president of East Tennessee Construction

---

[1] Because neither the two pictures nor the depositions reveal the condition of the concrete floor underneath the carpet at the accident site, they offer little aid in the determination of the cause or nature of the depression in the floor (Def. S.J. Rebuttal Ex. A, WMAF02, WMAF-03).

Services, cut back the carpet, repaired two holes, and replaced the carpet; Frame took several photographs during the repairs. East Tennessee's invoice for the floor repair lists the job description as: "Repaired dipped areas in the concrete floors and installed carpet at the men's and women's department (trip hazard)" (Def. S.J. Rebuttal Ex. B, WMDU 03). Consistent with such description, Robert Richardson, manager of the Hampton Wal-Mart store and defendant's designated representative, stated in his deposition that Frame's photographs depict the hole in the ladies' wear department (Richardson Depo. 10-11).

However, approximately three weeks after Richardson's deposition Frame was deposed and stated under oath that although he was asked to fix one hole in the men's wear department and one hole in the ladies' wear department, Frame, two helpers, and a Wal-Mart employee assigned to the ladies' wear department were unable to locate any depressions in the floor of the ladies' department (Frame Depo 13-15). Frame and his workers did, however, locate <u>two holes</u> in the men's department; the second hole was found just a few feet away from the first, located underneath a clothing rack. Thus, in April of 2006 it became clear that the photographs submitted by Frame <u>do not</u> depict the accident site in the ladies' department but rather illustrate two separate depressions located in the <u>men's department</u>. However, subsequent to Frame's repairs of the men's department floor but prior to Frame's deposition clarifying the area repaired and photographed, the Hampton Wal-Mart store underwent renovations which included the installation of hardwood floors; such renovations appear to have foreclosed the possibility of examining the hole at the accident site. Therefore, the only photographs of the accident site are the two pictures with the carpet still in place (Def. S.J. Rebuttal Ex. A, WMAF02, WMAF-03).

Paula Kribbs filed the instant action in October of 2005 in the Circuit Court for the City of Hampton, Virginia. On November 25, 2005, defendant filed a notice of removal to the United

States District Court for the Eastern District of Virginia, pursuant to this court's diversity jurisdiction. Subsequent to removal, the parties conducted discovery, and on May 19, 2006, defendant filed its motion in limine to exclude the testimony of Charles Raynor and motion for summary judgment. After both motions were fully briefed, on June 6, 2006, the court conducted a hearing on such motions. At the hearing, the court made a ruling on the record granting both of defendant's motions; the justification for the court's ruling is set forth in more detail below.

## II.  Standard of Review

Summary judgment is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985); Fed. Rule. Civ. Pro. 56(c). Although the court must draw all inferences in the non-movant's favor, once the movant has properly filed evidence supporting summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts in the form of exhibits and sworn affidavits illustrating a genuine issue for trial. Celotex, 477 U.S. at 322-24; Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994). In other words, while the movant carries the burden to show the absence of a genuine issue of material fact, when such burden is met, it is up to the non-movant to establish the existence of such an issue. Celotex, 477 U.S. at 322-24; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).

Summary judgment is not reserved for situations where no factual issues are in dispute; rather, to find against the moving party the court must find both that material facts are in dispute

and that the disputed issues are genuine. Fed. R. of Civ. Proc. 56(c). Disputed facts are "material" if they are necessary to resolving the case; for issues to be "genuine" they must be based on more than speculation or inference. See Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). If the moving party advances evidence suggesting that there is not a genuine and material dispute, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," as the existence of a scintilla of evidence is insufficient to defeat a motion for summary judgment. Matsushita, 475 U.S. at 586; Catawba Indian Tribe of S.C. v. South Carolina, 978 F.2d 1334, 1339 (4th Cir. 1992). Furthermore, summary judgment is not viewed as a "disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. of Civ. Proc. 1).

### III.  Analysis

Defendant's motion in limine seeks to exclude the testimony of Charles Raynor, the expert witness that plaintiff seeks to rely upon. Defendant's summary judgment motion contends that plaintiff is unable to establish that Wal-Mart had actual or constructive notice of the depression in the floor of the ladies' department prior to plaintiff's injury. As discussed below, the court grants both motions and further determines that plaintiff has failed to establish that a negative inference should be drawn against Wal-Mart based upon spoilation of evidence.

#### A. Motion in Limine

The motion in limine filed by Wal-Mart seeks to exclude the testimony of Charles Raynor, the expert plaintiff relies upon to establish that the indentation in the floor of the

Hampton Wal-Mart ladies' department was present for a significant period of time. Although Raynor's deposition reveals some conflict in his opinion as to exactly how long the indentation existed prior to plaintiff's accident, plaintiff contends that Raynor's testimony does not seek to definitively establish how long the hole existed; rather, it seeks to establish that a hole consistent with the facts before the court would take a period of time to form in a commercial concrete floor. However, because "the facts" that Raynor relied upon when formulating his opinion were subsequently proven to represent an area other than the ladies' department where the accident occurred, Raynor's opinion must be excluded.

In Griffin v. Spacemaker Group, Inc., 254 Va. 141, 146, 486 S.E.2d 541, 544 (1997), the Virginia Supreme Court discussed the standard for admitting expert testimony, noting that in civil cases, expert testimony is generally admissible "if it will assist the fact finder in understanding the evidence." Id. (quoting Tittsworth v. Robinson, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996)). However, the court qualified such statement, explaining that in order for expert testimony to be admissible certain "fundamental requirements" must be met including the fact that such testimony "cannot be speculative or founded upon assumptions that have an insufficient factual basis" and the expert must consider "all the variables that bear upon the inferences to be deduced from the facts observed." Id. Stated another way:

> An expert's opinion which is neither based upon facts within his own knowledge nor established by other evidence is speculative and possesses no evidential value. "Such statements violate the fundamental principle . . . that an inference cannot be drawn from a presumption. A verdict resting upon such foundation is not the fruit of evidence, but of conjecture, and cannot be upheld."

Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990) (quoting Virginian Railway Co. v. Andrews, 118 Va. 482, 489, 87 S.E. 577, 580 (1916)); see also Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002) ("Expert testimony is inadmissible if it is

speculative or founded on assumptions that have no basis in fact.") (citations omitted).

Here, the court concludes that Raynor's opinion is not premised upon a sufficient factual basis and therefore should be excluded as speculative.[2] The glaring defect in Raynor's methodology is that Raynor never relied upon any physical evidence from the accident site when formulating his opinion. First, Raynor admits in his deposition that he never contacted Robert Frame to discuss the photographs that Raynor relied upon (Raynor Depo. 29). Second, Raynor admits that he never inspected the accident site nor did he investigate what type of concrete was used during the construction of the Hampton Wal-Mart (Id. at 35-37). Third, Raynor admits that he performed no testing of any kind in order to formulate or support his opinion (Id. at 37). Finally, Raynor not only admits that he cannot establish whether the accident site was previously repaired or patched, but states that patching compound never effectively repairs holes in concrete (Id. at 58-60). It is therefore clear that the only "factual basis" for Raynor's opinion were Frame's photographs, and although Raynor's testimony may have been admissible based solely on relevant and reliable photographic evidence, the photographs used to formulate Raynor's opinion were not of the accident site and therefore irrelevant to the issue before the court.

Notwithstanding the above admissions, Raynor claims in his deposition and plaintiff repeats in her reply brief that Raynor's conclusions about the length of time the hole existed do not depend on Frame's photographs; however, such position is foreclosed by the undisputed facts

---

[2] The court also has misgivings about Raynor's qualifications to testify as an expert as although Raynor, a self-employed contractor, has experience working with concrete, he appears to lack significant experience or education in the practice of investigating causes of concrete damage and has never before been asked to render an opinion as to when a defect in a concrete floor came about (Raynor Depo. 20, 25). However, the court did not conduct an extensive investigation into Raynor's qualifications because it is plainly apparent that even if he were qualified, his opinion does not have a sufficient basis in fact to be admissible.

before the court.  Notably, Raynor's opinion that the damage to the floor "existed for a considerable period of time" necessarily relies upon eliminating "recent damage or stress caused by a falling object or other trauma" as a possible cause for the depression in the ladies' department (Def. M. in Limine Ex. B).  However, Raynor's only justification for eliminating trauma as a possible cause is that Frame's photographs did not display "an accumulation of debris or broken or crumbled concrete" which would be present if a trauma had recently occurred (Id.).  Without photographs depicting the condition of the concrete at the accident site, trauma cannot be eliminated.  See Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999) (concluding that the expert's opinion "was not sufficiently reliable" to be admitted because it was "constructed from unsupported suppositions" as the expert "could not eliminate other equally plausible causes" for the damage, including trauma).  Likewise, without photographs depicting the underlying floor at the accident site, Raynor is unable to rule out the possibility that the floor of the ladies' department had been previously filled or patched with a substance easily susceptible to trauma or deterioration.[3]  As a result, Raynor's opinion is not based upon "facts within his knowledge" nor facts "established by other evidence" and is therefore speculative and must be excluded.  Gilbert, 240 Va. at 160, 393 S.E.2d at 215.[4]

In a further attempt to avoid exclusion of Raynor's testimony, plaintiff argues that

---

[3] In his deposition Raynor explains: "My experience with patching compound is that it has never lasted in my own personal experience.  Every time I've ever used it, it did not work." (Raynor Depo. 59-60).

[4] Because Raynor only examined photographs of the concrete floor in the men's department, Raynor's conclusions are only justifiable if the court permits Raynor to presume that the holes in the men's department were identical to the hole at the accident site in the ladies' department.  However, such presumption "is not the fruit of evidence, but of conjecture" and therefore cannot be allowed.  Gilbert, 240 Va. at 160, 393 S.E.2d at 215.

"trauma" can be eliminated because it is undisputed that the carpet covering the hole at the accident site was not visibly damaged and because the manager of the Hampton Wal-Mart indicated that he was unaware of any trauma to the floor prior to plaintiff's accident (Pl. Limine Reply 4-5 n.1).  However, first, plaintiff fails to provide any justification whatsoever for the broad conclusion that in order for the concrete to be damaged the carpet would necessarily be damaged; common sense suggests that a heavy object without sharp edges could damage the underlying floor without damaging the carpet, especially if a faulty patch had been installed.  Second, plaintiff appears to misunderstand her burden of proof as plaintiff suggests that trauma can be ruled out because "there is no evidence of any act or event which could account for the defect in the concrete during or near th [sic] time of Plaintiff's accident, such as recent trauma from a falling object" (Pl. S.J. Reply 2).  However, Wal-Mart need not advance evidence establishing trauma; on the contrary, it is plaintiff that must disprove it because "[t]he burden of proving the defendant's negligence [is] on the plaintiff." Colonial Stores Inc. v. Pulley, 203 Va. 535, 537, 125 S.E.2d 188, 189 (1962).  Plaintiff's attempt to shift the burden to Wal-Mart further indicates that Raynor cannot determine how or when the hole was created and therefore plaintiff cannot carry her burden.  See id. at 538, 125 S.E.2d at 190 (finding that because plaintiff failed to establish "how, when, or by whom the [dangerous item] was placed on the floor" the jury verdict awarding plaintiff damages "could have been reached only as the result of surmise, speculation and conjecture").

      As a result of the fact that Raynor did not examine any evidence from the accident site and therefore cannot eliminate recent trauma or even a faulty patch that failed at the moment plaintiff stepped on it, Raynor's testimony must be excluded.  As Raynor admits, the length of time that the indentation was in the floor "goes back to how the hole actually got there," (Raynor

9

Depo. 53), and Raynor's opinion neither affirmatively establishes how the hole formed nor eliminates alternative plausible explanations such as trauma. Defendant's motion in limine is therefore granted.

**B. Motion for Summary Judgment**

Although the court grants defendant's motion in limine, plaintiff nevertheless has the opportunity to establish a prima facie case of negligent maintenance of the premises if plaintiff can show: (1) that Wal-Mart had actual notice of the defect in the floor of the ladies' department; or (2) that the defect in the floor was affirmatively created by Wal-Mart; or (3) that Wal-Mart had "constructive notice" because the defect existed for a sufficient period of time such that Wal-Mart "should have known" of its existence. As discussed below, because the court concludes that plaintiff fails to establish notice based on any of these three theories, the court grants defendant's summary judgment motion.

First, plaintiff can plainly establish a prima facie case if she presents evidence indicating that Wal-Mart had "actual notice" of the hole in the floor at the accident site. In Pulley, 203 Va. at 537, 125 S.E.2d at 190, the Virginia Supreme Court explained:

> The defendant owed the plaintiff the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit . . . [and] to warn the plaintiff of [an] unsafe condition if it was unknown to her, but was . . . known to the defendant.

Id. (emphasis added). Here, plaintiff failed to provide any evidence in her memoranda, exhibits, or at the hearing, establishing that Wal-Mart had actual notice of the depression in the ladies' department prior to plaintiff's accident. Although plaintiff argues that Wal-Mart had actual notice because Wal-Mart employees vacuum the store every night and that by "rolling the

vacuum over the top of the hole or indentation" they obtained notice (Pl. S.J. Reply 2), plaintiff fails to submit an affidavit of any Wal-Mart employee indicating that the hole was noticed during vacuuming. Furthermore, plaintiff did not investigate the width of the vacuums used at Wal-Mart nor the weight of such vacuums. Therefore, plaintiff's conclusion that the vacuums would necessarily fall into the depression a sufficient amount to be noticeable by store employees is plainly "surmise, speculation, and conjecture" which cannot form the basis for establishing actual notice. See Pulley, 203 Va. 535 at 538, 125 S.E.2d at 190.

Second, plaintiff can potentially establish a prima facie case by showing that "the hazardous condition was affirmatively created by the property owner." Austin v. Shoney's, Inc., 254 Va. 134, 139, 486 S.E.2d 285, 288 (1997). Such a showing is sufficient because a property owner that affirmatively creates a danger is charged with the constructive knowledge of such danger. See id. (finding that if the jury determined that the grease build up on the restaurant floor resulted from improper cleaning, the restaurant would be charged with constructive notice of the danger it affirmatively created). Plaintiff advances no facts suggesting that the depression in the floor was created by Wal-Mart; therefore, no notice existed based on the affirmative creation of the hazard by the property owner.

Third, plaintiff could establish a prima facie case based on the theory of constructive notice; that is, defendant "should have known" of the defect in the ladies' department. See Pulley, 203 Va. at 537, 125 S.E.2d at 190 (finding that the duty of care owed to invitees includes the duty to "warn the plaintiff of the unsafe condition if it was unknown to her, but was, or should have been, known to the defendant") (emphasis added). Similar to plaintiff's response to defendant's motion in limine, plaintiff attempts to establish constructive notice by trying to shift the burden to Wal-Mart to explain the depression in the floor. Specifically, plaintiff again

11

references the fact that the store manager was unaware of any recent trauma and, relying on caselaw from outside of Virginia, contends that the lack of evidence of trauma as well as the fact that this matter involves a "structural defect" permit the court to draw an "inference" that the depression formed over a considerable period of time.[5]  See, e.g., Murphy v. S. S. Kresge Co., 239 S.W.2d 573, 578 (Mo. Ct. App. 1951) (inferring that a long crack in the floor "came into existence gradually through hard usage over a long period of time").

     As discussed in the preceding section, plaintiff's contention that the store manager's lack of knowledge regarding trauma to the floor is equivalent with the concession that trauma did not occur is not only the result of faulty reasoning, but is premised on an improper application of plaintiff's burden.  Plaintiff must affirmatively exclude trauma as a potential source of the hole if plaintiff intends to advance the theory that the hole could only have formed over a period of time.  Wal-Mart's admission that it is "unaware" of any trauma is the same as a supermarket's admission that it was "unaware" as to how produce ended up on the floor; such admissions are insufficient to establish constructive notice.  See Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 184, 396 S.E.2d 649, 651 (1990) (reversing a jury verdict awarding plaintiff damages for slipping on a bean in the produce department of defendant's supermarket because although defendant could not explain how the bean ended up on the floor, it was the plaintiff's burden to "prove that Winn-Dixie had either actual or constructive notice of the bean's presence and failed to remove it").  Just as the court in Parker refused to allow a jury to make inferences regarding how or when

---

[5] Plaintiff argues that a structural defect "by its very nature, supplie[s] constructive notice," (Pl. S.J. Reply 4); however, plaintiff fails to cite any caselaw establishing such premise. Furthermore, Roll 'R' Way Rinks, Inc. v. Smith, 218 Va. 321, 328, 237 S.E.2d 157, 162 (1977) indicates that the analysis does not change in a structural defect case; rather, the plaintiff must still establish that the property owner had actual or constructive knowledge of the defect.

the bean reached the floor, this court refuses to infer that a trauma did not occur merely because the Wal-Mart store manager is not aware of such incident. This court's refusal to permit an inference regarding the timing of the defect's formation is in line with well established rules applied by the Virginia courts in slip and fall cases. Notably, the Virginia Supreme Court has expressly rejected a "liberal expansion" of the constructive notice doctrine, finding that a jury question does not exist if the theory of constructive notice can only be justified based on speculation as to "how long a foreign substance had been on the floor or how it got there." Great Atlantic & Pac. Tea Co. v. Berry, 203 Va. 913, 916-17, 128 S.E.2d 311, 313-14 (1962). Therefore, following the unwavering instruction provided by the Virginia Supreme Court in constructive notice cases, here, plaintiff plainly fails to establish that the hole in the floor of the ladies' department of the Hampton Wal-Mart existed for a sufficient period of time such that Wal-Mart "should have known" of its existence.

In the alternative, even if the court deemed it proper to "infer" that the depression in the concrete had existed for weeks, months, or even years, plaintiff's contention that such determination would necessarily establish constructive notice is undermined by the fact that the depression was covered by carpet and the facts suggest that it was extremely difficult to notice. Although the typical constructive notice slip and fall case generally turns only on whether the plaintiff can establish that a piece of produce or spilled liquid was on the floor for an extended period of time, such inquiry is paramount because such hazards are typically visible upon inspection by the property owner. However, the facts of the instant matter are distinguishable from such cases because even if the hole in the concrete existed for a lengthy period of time, such hole was not readily visible as it was obscured by carpet which plaintiff admits was not damaged and only showed signs of wear consistent with "everyday usage" (Pl. Depo. 42). In determining

13

whether plaintiff established constructive notice, the court must be mindful of the fact that the underlying inquiry is whether the owner of the premises "should have known" that the danger existed. In Grim v. Rahe, Inc., 246 Va. 239, 242, 434 S.E.2d 888, 890 (1993), the court explained the application of such inquiry as requiring that the plaintiff must provide: (1) "evidence that the defect was noticeable"; and (2) evidence showing that the defect "had existed for a sufficient length of time to charge its possessor with notice of its defective condition." Id.

Although the parties completed discovery prior to the hearing on the instant motions, plaintiff failed to submit a sworn statement, deposition transcript, or any other form of admissible evidence establishing that the hole underneath the carpet was noticeable such that Wal-Mart "should have known" that it existed. On the contrary, both plaintiff's deposition and the deposition of Robert Franks, the concrete repairman, suggest otherwise. Notably, plaintiff's deposition suggests that the hole was only noticeable if pressure was put on the carpet:

> Q: Did you tell [the Wal-Mart employee] what happened?
> A: I told him I had fallen. And then Dan[6] was able to get better into the area and he said – you know, is when we both were like, you know, doing – how would you say? Pushing down.
> Q: Uh-huh
> A: Because I was still in the same spot and, look at that, and we were able to kind of push down on the softness of the carpet to show where.

(Pl. Depo. 44-45). Likewise, the Franks deposition included the following exchange:

> Q: You said that the photographs that you have been talking about here today and the repairs you did was in the men's department?
> A: Right.
> Q: And that you didn't find any spot in the ladies' department; is that correct?
> A: That's hard to find. I mean, I took a Wal-Mart personnel that – actually, a lady that worked in the dressing room area of the ladies' department, and we walked around the floor, and we couldn't find it. They didn't know where they were

---

[6] "Dan" refers to Daniel Jensen, plaintiff's fiancé who was shopping with her at the time of her accident.

14

>     at.  So I had two other workers with me, plus the Wal-Mart personnel, and we
>     walked around.  <u>And like I said, with the carpet like it is, it's almost impossible
>     to see them.  You actually have to feel for them.</u>

(Franks. Depo 26-27) (emphasis added).  Therefore, even if the court inferred that the hole in the ladies' department existed for a significant period of time, the evidence fails to suggest that a reasonable inspection of the premises by a Wal-Mart employee would have revealed the existence of the hole; thus, plaintiff has not established that Wal-Mart "should have known" of the defect in the floor.  <u>See</u> <u>Culpepper v. Neff</u>, 204 Va. 800, 804, 134 S.E.2d 315, 318 (1964) ("The owner of the premises is not an insurer of an invitee's safety thereon; but must use ordinary care to render the premises reasonably safe."); <u>Memco Stores, Inc. v. Yeatman</u>, 232 Va. 50, 55, 348 S.E.2d 228, 231 (1986) (finding that constructive notice exists if an "ordinary and prudent person" in the position of the store owner "could have foreseen the risk of danger").  As a result of both the hidden nature of the hole,[7] as well at the fact that plaintiff failed to establish the length of time the hole existed, defendant's motion for summary judgment is granted.

### C.  **Plaintiff's Allegation of Spoilation of Evidence**

Plaintiff's reply brief raises spoilation of evidence as an alternative ground for denial of defendant's summary judgment motion.  Plaintiff's position, advanced both in writing and at the hearing, is that the court should draw a negative inference against Wal-Mart because Wal-Mart

---

[7] The deposition of Daniel Jensen reveals that "a few weeks" prior to plaintiff's accident the Hampton Wal-Mart rearranged its ladies' department, moving around fixtures and clothing racks.  Hypothetically speaking, as there is no evidence suggesting that the hole even existed a few weeks prior to the accident, if the hole had previously existed, it is possible that it remained undiscovered because it was located underneath a clothing rack or other fixture where neither employees nor customers would step on it.

"inadvertently or intentionally concealed evidence from Plaintiff" (Pl. S.J. Reply 6).[8] Specifically, plaintiff points to the fact that Wal-Mart's representative stated under oath that the photographs taken by Robert Frame were photographs of the accident site (Richardson Depo. 10), but that Wal-Mart later recanted such statement, stating that the pictures were instead photographs of two holes in the floor of the men's department. Furthermore, plaintiff highlights that "while plaintiff still had the opportunity to inspect the defect, Wal-Mart remodeled its floors with hardwood, thereby destroying the evidence" (Pl. S.J. Reply 6).[9] Although defendant admits that Richardson made a glaring misstatement as to what was depicted in the pictures provided by Frame, defense counsel stated at the hearing on this matter that Frame had previously indicated that repairs were made to both the men's and ladies' departments, and that it was not until Frame's deposition on April 11, 2006, after remodeling was completed, that counsel discovered that the photographs were not of the accident site.

Addressing first plaintiff's unsubstantiated accusations of intentional misstatements, the court has no reason to suspect that Wal-Mart's representative or counsel intentionally mislead plaintiff or plaintiff's counsel in any way. In response to plaintiff's second request for production of documents requesting "Any repair records, reports, invoices, or other documentation involving a hole, recess, or indentation in the floor in the area of plaintiff's

---

[8] Plaintiff provides no justification for her allegation that Wal-Mart intentionally concealed evidence. Likewise, at the hearing, plaintiff's counsel suggested that Wal-Mart had lied to plaintiff; however, when confronted by both defense counsel and the court, plaintiff's counsel had absolutely no evidence in support of such a bald accusation.

[9] By the time Richardson was deposed (March 22, 2006), the renovations of the Hampton Wal-Mart were nearly complete, as such renovations occurred from January 16, 2006 through March 31, 2006 (Def. S.J. Rebuttal 4). Such renovations did not begin until nine months after plaintiff's accident and nearly three months after the instant lawsuit was filed. However, according to Wal-Mart, "Plaintiff has never requested to inspect the store at any point" (Id.).

alleged slip-and-fall incident relating to repairs or corrections performed or made subsequent thereto," Wal-Mart submitted Frame's photographs along with numerous purchase orders, invoices, and internal documentation relating to the repairs made by Frame's company, East Tennessee Construction Service.  The job description on the East Tennessee invoice, which is dated almost two weeks <u>after</u> the repairs were completed, states: "Repaired dipped areas in the concrete floors and installed carpet at the men's and women's department (trip hazard)."  Thus, the face of Frame's invoice even indicates that a hole in the women's department was repaired, supporting Richardson's position that he was under the impression that Frame had both documented and repaired the flooring defect at the accident site.

Turning to the alleged destruction of evidence, although the drastic remedy of excluding evidence or granting a summary dismissal due to spoilation requires that bad faith be proven, plaintiff is correct that bad faith is <u>not required</u> in order to warrant an inference against the party that destroyed evidence.  <u>Compare</u> <u>Cole v. Keller Industries</u>, 132 F.3d 1044, 1047 (4th Cir. 1998) ("[T]he vast weight of authority, including the Virginia Supreme Court, holds that absent bad-faith conduct applying a rule of law that results in dismissal on the grounds of spoilation of evidence is not authorized."), <u>with</u> <u>Vodusek v. Bayliner Marine Corp.</u>, 71 F.3d 148, 156 (4th Cir. 1995) ("[T]he trial court has broad discretion to permit a jury to draw adverse inferences . . . [and] [w]hile a finding of bad faith suffices to permit such an inference, it is not always necessary.").  However, although bad faith is not required to justify an "inference about a party's consciousness of the weakness of his case," such inference "cannot be drawn merely from [a party's] negligent loss or destruction of evidence," but rather requires a showing that: (1) the party "knew the evidence was relevant to some issue at trial"; and (2) the party's "willful conduct resulted in its loss or destruction."  <u>Vodusek</u>, 71 F.3d at 156; <u>see</u> <u>also</u> <u>Anderson v. National R.R.</u>

Passenger Corp., 866 F. Supp. 937, 945-46 (E.D. Va. 1994) ("If accorded the construction most favorable to Plaintiffs here (while not subscribing to this as the proper standard), the cases require at a minimum that the party must have tampered with the evidence in some way while on notice that the evidence 'might be necessary' to some party's claim.").

On these facts, the court concludes that a spoilation inference is not warranted because plaintiff fails to establish either that defendant knew that the Hampton Wal-Mart store contained relevant evidence when remodeling commenced or that defendant's willful conduct caused the evidence to be destroyed. In both Cole and Vodusek, cases relied upon by plaintiff, the party charged with destruction of evidence possessed the evidence in order to evaluate it in preparation for trial and during such evaluation, the evidence was destroyed based on intentional investigative efforts. See Cole, 132 F.3d at 1046 (explaining that while examining the step of a ladder that had failed and caused the plaintiff's injuries, the engineering consultant "ground off the heads of the rivets at the left front of the step, forcibly broke the right rivets, and hacksawed out a portion of the step surrounding the left rear rivet"); Vodusek, 71 F.3d at 155 (referencing the district court's findings in a case alleging negligence and faulty design of a boat's fuel system, stating that the plaintiff's expert witness and plaintiff's sons had "virtually attacked the boat with a chain saw and sledge hammer" and that the area of the boat "critical to the theory eventually presented by [plaintiff's expert] was literally ripped apart"). In contrast, here, when the remodeling began, Wal-Mart believed that the hole in the ladies' department had already been repaired and documented; therefore, Wal-Mart was unaware that relevant evidence still existed inside the store. Additionally, unlike the experts in both Cole and Vodusek who destroyed evidence as part of their "deliberate investigative efforts," Vodusek, 71 F.3d at 156, here, the destruction of evidence resulted from a store remodeling wholly unrelated to the

lawsuit. As a result, plaintiff has failed to establish that an inference should be drawn against Wal-Mart pursuant to the spoilation doctrine.

### IV. Conclusion

After considering the motions before the court, as well as the arguments presented by counsel both in writing and at the hearing on this matter, the court concludes that the opinion advanced by plaintiff's expert is based on speculation not grounded in fact and must therefore be excluded. Additionally, the court concludes that plaintiff failed to establish that, prior to her accident, Wal-Mart had actual or constructive notice of the depression in the floor of the ladies' department of the Hampton store where plaintiff was injured. Likewise, plaintiff also failed to establish that the spoilation doctrine applies on these facts. As a result, defendant's motion in limine and motion for summary judgment are hereby **GRANTED**.

The Clerk is **REQUESTED** to mail copies of this Order to counsel of record.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June  27 , 2006